## JAMES W. HOWARD *vs.* DONALD W. ZILCH.

Norfolk.   January 8, 1963. — May 6, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Frauds, Statute of.   Bankruptcy,* Promise to pay by discharged debtor.
*Contract,* By discharged bankrupt to pay debt, Contract in writing.
*Bills and Notes,* Check.   *Words,* "Promise . . . contained in some writing," "Engages."

Where, after discharge of a debt in bankruptcy of the debtor, he directed
his attorney to pay the creditor the amount of the debt out of funds
which had come into the attorney's hands for the debtor, and the attorney
accordingly drew a check for that amount payable to the debtor and the
creditor and sent it to the debtor, who indorsed it and delivered it to the
creditor, but the creditor never collected it because payment on it was
stopped by the attorney at the request of the debtor, the check constituted a "promise for the payment of" the debt "contained in . . . [a]
writing signed by . . . [a] person thereunto by . . . [the debtor] lawfully authorized" within G. L. c. 259, § 3.

CONTRACT.   Writ in the District Court of Western Norfolk dated July 17, 1959.

Upon removal to the Superior Court the action was heard by *DeSaulnier, J.*

*Howard C. Abbott* for the plaintiff.

*Robert G. Funke* for the defendant.

SPIEGEL, J.   This is an action of contract in which the plaintiff seeks to recover $3,833.47, with interest thereon. The case was submitted to the Superior Court under a statement of agreed facts.   The case is here on the plaintiff's appeal from the order of a judge in the Superior Court that judgment be entered for the defendant.

We summarize the agreed facts.   In April of 1956 the plaintiff became an accommodation cosigner on a note payable by the defendant Zilch to a bank.   On or about December 3, 1956, the defendant was adjudicated a bankrupt in the United States District Court for the District of Massa-

chusetts. The plaintiff, as cosigner of the note, "was called upon by the bank for payment of the balance then due." The plaintiff paid the bank $3,558.07, plus interest. In the bankruptcy proceedings the defendant listed the plaintiff as a creditor and listed the claim in his schedule of debts. The plaintiff filed a proof of claim in the bankruptcy proceedings totaling $3,598, which was duly allowed. No dividends were paid to any of the creditors and on June 12, 1958, the defendant was ordered discharged from all debts and claims in the bankruptcy proceedings. During those proceedings and after his discharge, he orally promised to reimburse the plaintiff for all payments which the plaintiff made on the defaulted note. The reimbursement was to be made "out of the proceeds of a motor vehicle tort action" in which the defendant was represented by a Mr. George W. Dana. The defendant orally directed and authorized Mr. Dana to determine the amounts paid by the plaintiff on the defaulted note and "to make arrangements" for reimbursement of that amount out of the defendant's funds in the possession of Mr. Dana. On or about December 30, 1958, Mr. Dana and the plaintiff met, whereupon Mr. Dana drew a check payable to the defendant and the plaintiff in the sum of $3,833.47. Mr. Dana then mailed the check to the defendant who held it until "the end of February or the first of March 1959," when he went to the plaintiff. The defendant signed his name on the reverse side of the check and gave it to the plaintiff "without instructions." The plaintiff understood that he "might cash the same and retain the proceeds." This meeting occurred in the evening after business hours. About 1 A.M. the next morning, the defendant called Mr. Dana and requested him to stop payment on the check. At 9 A.M. of that same day, Mr. Dana ordered payment stopped on the check. He called the plaintiff advising him that he had done so at the defendant's request. "As a result, the plaintiff did not endorse the check or present it for payment." Mr. Dana represented the defendant during all of these transactions and at no time did he represent the plaintiff. No payment has

been made on the check and the plaintiff still has it in his possession.

In order to recover on the underlying obligation, the plaintiff must show that the provisions of G. L. c. 259, § 3, have been met. This section states: "No promise for the payment of a debt, made by an insolvent debtor who has obtained his discharge from such debt under proceedings in bankruptcy or insolvency, shall be evidence of a new or continuing contract whereby to deprive the debtor of the benefit of relying upon such discharge in bar of the recovery of a judgment upon such debt, unless such promise is made by or contained in some writing signed by him, or by some person thereunto by him lawfully authorized." The promise must be "definite and unequivocal" and yet "[a]s the statute does not extend beyond the requirement of evidence of a continuing promise in some writing signed by the debtor or by his authority, no precise form of statement is necessary, and the intention and obligation of the debtor must be gathered from the phraseology he chooses to use." *Nathan* v. *Leland,* 193 Mass. 576, 581, 582. Assuming a sufficient promise in writing, no consideration other than the discharged debt is necessary to bind the debtor. *Tremont Trust Co.* v. *Brand,* 244 Mass. 421, 424. *Barber* v. *Rathvon,* 250 Mass. 479, 484. Restatement of Contracts: Massachusetts Annotations, § 87 (1935). The issue before us is whether the check drawn by Mr. Dana, who is conceded to have been the authorized representative of the defendant, constitutes a promise "contained in some writing" within the ambit of G. L. c. 259, § 3. We believe it does. The Uniform Commercial Code, G. L. c. 106, § 3–413 (2), provides: "The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any indorser who takes it up. The drawer may disclaim this liability by drawing without recourse." The check involved in this case is a "draft" drawn on a bank and payable on demand. G. L. c. 106, § 3–104 (2) (b). The drawer, Mr. Dana, by his order to stop payment caused the check to be dishonored

within the meaning of § 3–507 (1), which states: "An instrument is dishonored when . . . (b) presentment is excused and the instrument is not duly accepted or paid." See § 3–510 (b) as to evidence of dishonor and specifically comment 2 to that section found in Am. Law Inst. Uniform Commercial Code, 1958 Official Text with comments. The plaintiff was excused from presentment, protest or notice to the drawer, Mr. Dana, because of § 3–511 (2), which reads: "Presentment or notice or protest . . . is entirely excused when . . . (b) such party has himself dishonored the instrument or has countermanded payment . . . ." The plaintiff is the "holder" of the check. § 1–201 (20). The above-cited sections demonstrate the applicability of § 3–413 (2). This section is entitled "Contract of Maker, Drawer and Acceptor" and we construe the word "engages" in such context as the equivalent of "promises." See Braucher and Sutherland, Commercial Transactions (2d ed.) 71, 75. A check is a "contract in writing." *Buono* v. *Nardella,* 344 Mass. 257, 259. Thus, the drawer, Mr. Dana, made a promise in writing to pay the amount on the face of the check. Since it is undisputed that the face amount was determined by the discharged debt and that Mr. Dana was a "person . . . lawfully authorized" by the defendant, the end result is that the defendant has made a promise "contained in some writing" sufficient to satisfy G. L. c. 259, § 3. This result comports with reason and commercial feasibility. An opposite conclusion would give less legal significance to a check than to a letter in which the discharged debtor made a promise to pay. See *Cook* v. *Shearman,* 103 Mass. 21, 23, and *Nathan* v. *Leland,* 193 Mass. 576, 581, for examples of such letters. In equating a check with such a letter for purposes of G. L. c. 259, § 3, the danger of a bankrupt thoughtlessly yielding the benefit of his discharge or of "vexatious" suits being brought against him is sufficiently inhibited. See *Nathan* v. *Leland, supra,* 581. Indeed, we believe a debtor is far less likely to draw a check, or to authorize its drawing, than to make a promise to pay in a personal letter if he lacks a real intention to pay and merely intends the recognition of a moral obligation.

In deciding that the plaintiff is entitled to recover from the defendant on the underlying obligation, evidenced by the check, we do not reach the question, raised by the plaintiff, as to whether there could have been recovery on the instrument against the defendant on a contract of indorsement. See § 3–802 (1) (b). Whether there could be recovery against the drawer, who is not a party defendant in this action, is not before us. Either theory would raise issues under § 3–116 (b) and other sections, which we need not here decide. The order that judgment be entered for the defendant is reversed and judgment is to be entered for the plaintiff.

*So ordered.*